## No. 26062

## The People of the State of Colorado v. Lee James Ware
(528 P.2d 224)

Decided November 18, 1974.

Dale Tooley, District Attorney, O. Otto Moore, Assistant, Brooke Wunnicke, Chief Appellate Deputy, Ashley I. Anderson, Assistant, for plaintiff-appellant.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Lawrence J. Schoenwald, Deputy, for defendant-appellee.

*In Department.*

Opinion by MR. JUSTICE DAY.

The People through the district attorney's office appeal a judgment of the Denver district court entering a directed verdict of not guilty by reason of insanity in a separate trial on that issue. We affirm the trial court.

Defendant Ware was charged with the premeditated murder of one Leonza Hargrove. He entered a plea of not guilty by reason of insanity. Pursuant to Colo. Sess. Laws 1972, ch. 44, 39-8-104 at 226 there was a bifurcated trial, the first going to the issue of sanity. At the close of the People's evidence, defendant moved for a directed verdict, which was denied. At the close of all the evidence, defendant renewed the motion. Pursuant to Crim. P. 29(b), the trial court reserved decision and submitted the case to the jury. The jury found that the defendant was *sane*. The court allowed the defendant to renew his motion and set aside the verdict, holding that Ware was legally *insane*. The court found: "[T]here is not sufficient evidence * * * upon which reasonable persons could find the defendant sane beyond a reasonable doubt * * *."

The trial court based its decision on the following state of the record: In 1964 Ware began having delusions about the Black Muslims. He later suspected his professors, friends and wife of being Black Muslim agents conspiring to make him fail in school and drive him into a mental institution. He separated from his wife and came to Denver.

Ware began having a homosexual affair with one George. George abandoned him, leaving him overwrought. George and Leonza Hargrove (the victim in this case) shared an apartment. Ware went there and had a heated argument with Hargrove and two other men about George's whereabouts. Ware became angry, started crying, and left the apartment. He reappeared with a rifle and shot Hargrove about 10 times. Ware then went to the police station and gave himself up.

The People's case-in-chief consisted of two eyewitnesses who testified that Ware was angry and upset. The People also pre-

sented the testimony of the pathologist who examined the body of the victim. None of these witnesses expressed an opinion about Ware's sanity.

The defense presented four lay witnesses, all of whom expressed opinions that Ware was not, in some way, normal. The first witness was a minister who described Ware's emotional disturbances. Two witnesses were coworkers, who testified to Ware's erratic work habits. The last witness was a friend, who testified to Ware's delusions of fear of the Black Muslims and his obsession with George.

The defendant also presented the testimony of three expert psychiatrists, appointed by the court, who expressed opinions that Ware was a paranoid schizophrenic. One or more testified that he had tenuous emotional control, poor impulse control, ambivalence, delusions and hallucinations. They gave their opinion that Ware was legally insane, and could not refrain from doing wrong.

In rebuttal, the People put the arresting officer on the stand, who testified (having seen Ware for about 40 minutes) that Ware appeared substantially similar to others in his same situation. How the others appear was not particularized and the officer gave no opinion about Ware's sanity.

I.

Every person is presumed sane, but once any evidence of insanity is introduced, due process requires that the People prove sanity beyond a reasonable doubt. Colo. Sess. Laws 1972, ch. 44, 39-8-105(2) at 227; *Davis v. United States,* 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499 (1895); *People ex rel. Juhan v. District Court,* 165 Colo. 253, 439 P.2d 741 (1968); *Wright v. United States,* 250 F.2d 4 (D.C. Cir. 1957). If, after considering all the evidence, the jury has a reasonable doubt whether the defendant was sane or insane at the time of committing the act, the verdict must be that the defendant is insane. *Graham v. People,* 95 Colo. 544, 38 P.2d 87 (1934).

The kind and quantity of evidence of sanity which the prosecution must produce to meet its burden and take the issue to the jury will vary in different cases. The presumption of sanity will stand if no evidence of insanity is offered by the defense.

Some competent lay evidence of sanity may suffice when the defendant has introduced only token evidence of insanity. However, this same evidence of sanity may be totally inadequate when the defendant's evidence of insanity is substantial. *See Wright, supra.*

The People rely strongly on the recent case of *People v. King,* 181 Colo. 439, 510 P.2d 333 (1973). In that sanity trial we reversed a directed verdict, holding that on the state of the evidence presented therein the issue should have gone to the jury. However, there are several significant distinctions between the case at bar and *King:*

(a) King testified to a temporary condition claiming he was on a bad trip induced by LSD, but had no corroborative evidence to support his story. In contrast there was plenty of lay corroboration about Ware's delusions, inappropriate behavior, ambivalence, paranoid reactions and irrational crying.

(b) King had no history of mental illness. Ware did, and, according to the psychiatrists, it has continued even after the homicide.

(c) King's symptoms were entirely assumed from his own narrative. Ware's symptoms were shown to both lay and expert witnesses through personal observations.

(d) King was examined by 2 psychiatrists for a total of 4 hours, approximately 8 months after the incident. Ware was examined by 3 psychiatrists for a total of about 25 hours. His analysis was more thorough and of longer duration.

But most significant, the People's evidence itself went only to the commission of the act and to the surrounding circumstances. While this is relevant, the evidence so offered in some way must touch on the issue: whether the defendant could distinguish between right and wrong, and adhere to the right and refrain from the wrong. In *King,* the lay testimony stressed the defendant's calmness, and how he appeared to make rational conversation and choices. In the present case the People merely presented flat conclusions about Ware's looks and actions, without any opinions whatsoever. There is nothing in the testimony of the prosecution's witnesses which is inconsistent with the medical diagnosis of paranoic schizophrenia, nor is there anything which is probative of sanity.

As stated in *Graham, supra:*

"* * * If any evidence was obtainable, from either expert or nonexpert witnesses, that would show or tend to show that the defendant was sane, it was the duty of counsel for the people to produce it; but no such evidence was offered, and in the circumstances its absence is significant. The strong showing of insanity made by the testimony of reputable disinterested and impartial physicians who were selected not by the defendant but by the court, was not met even by one word of testimony to the contrary. * * *"

Of course, the jury is not bound by the testimony of experts and is free to believe lay testimony over any other. *Rupert v. People,* 163 Colo. 219, 429 P.2d 276 (1967); *Arridy v. People,* 103 Colo. 29, 82 P.2d 757 (1938). However, what the jury accepts must support its verdict. All of the vital evidence in this case went to Ware's *insanity.* Assuming it was rejected by the jury, the People presented *no* evidence on *sanity* which rose to the dignity of proof beyond a reasonable doubt. Thus, looking at the totality of the proof in the light most favorable to the People, there was no substantial competent evidence to support the jury verdict. The trial court correctly ruled that the prosecution had failed to meet its burden of proof. The jury verdict could not be allowed to stand, as it was "incomprehensible" in light of the evidence produced. *King, supra; Graham, supra.*

II.

The People are limited on appeal to questions of law. Colo. Sess. Laws 1972, ch. 44, 39-12-102 at 253. The only question of law presented is whether the trial court had the right to decide as it did. We hold that not only did the lower court have the right, but also the *duty* to so decide when the People fail to meet their burden of proof. *See Wright, supra.*

This Court has noted the danger of jurors disregarding the trial court's instructions due to aroused passions and prejudices. Jury verdicts were reversed in those cases. *See Gomez v. District Court,* 179 Colo. 299, 500 P.2d 134 (1972); *People v. Anderson,* 159 Colo. 124, 410 P.2d 164 (1966); *Graham, supra.* We quote with approval from *People v. Urso,* 129 Colo. 292, 269 P.2d 709 (1954):

"* * * [I]t is within the power of a trial court to set aside a

verdict, not supported by competent legal evidence, * * * [T]he trial court is compelled to survey and analyze the evidence, * * * If it is to the end that the evidence is insufficient or incompetent, and no part of it is convincing beyond a reasonable doubt, then [the trial judge] should be courageous enough to prevent a miscarriage of justice by a jury. * * * [The trial judge] certainly had the right to say, and it was his duty to say, that it was unbelievable and, in law, was not competent to support a verdict of guilt, then we must uphold the end of such courageous action by affirming his judgment; * * * ''

Judgment affirmed.

MR. JUSTICE HODGES, MR. JUSTICE GROVES and MR. JUSTICE LEE concur.