STATE OF WEST VIRGINIA

*v.*

LUTHER MILAM

(No. 14060)

Decided November 20, 1979.

*D. Grove Moler* for plaintiff in error.

*Chauncey Browning*, Attorney General, *Gregory W. Bailey*, Assistant Attorney General, for defendant in error.

MILLER, JUSTICE:

The defendant, Luther A. Milam, was convicted of second degree murder in the Circuit Court of Wyoming County. The conviction was obtained upon a retrial following this Court's reversal of his previous conviction on the same charge, *State v. Milam*, ____ W. Va. ____, 226 S.E.2d 433 (1976).

This appeal rests principally on three grounds. The first raises a claim of surprise resulting from the introduction of a written confession and the further assertion that it was involuntary. The confession was not introduced in the first trial and was not disclosed to the defense attorney until after the commencement of the second trial. The second ground challenges the trial court's ruling regarding the jury instruction on the defense of insanity. The third ground relates to the sufficiency of the State's proof of the defendant's sanity.

The factual events surrounding the death of the victim are for the most part undisputed, and are set forth in the earlier opinion of this Court upon appeal from the first trial of the defendant, *State v. Milam, supra*. The defendant has a history of organic brain injury and psychiatric hospitalization. He lived in the same apartment building as the victim, with whom he had a hostile relationship. A day or so prior to his death, the victim was seen armed and apparently lying in wait for the defendant. On the day of the homicide, the victim was shot twice by the defendant in the hallway of their apartment building following a brief argument. At the first and second trials, the principal defense was insanity.

## I

The prosecution introduced a written confession given by the defendant to the State Police on the day of the shooting. No confession had been produced at the first trial and its existence was unknown to the defendant's attorney. The prosecuting attorney had not participated in the first trial and asserted that he first discovered the confession while searching his files at midnight on

the day preceding the trial. He notified the defendant's counsel of its existence following the noon recess and after opening statements were presented, but before any witnesses had been called.

The court then held an *in camera* hearing in which the police officers who had taken the confession testified to its voluntariness. The defendant's attorney objected to the introduction of the confession on the ground of surprise. He stated the defendant had never told him that he had given a statement to the police and that it was not introduced at the first trial. He further objected on the basis that, since the chief defense in the case was the insanity of the defendant at the time of the homicide, the voluntariness of the confession could not be ascertained without psychiatric testimony.[1] The court overruled defense counsel's objection and the confession was admitted in the State's case-in-chief.[2]

In our jurisdiction the obligation of the prosecution to disclose relevant evidence prior to trial varies with the

---

[1]Defense counsel's statement on the voluntariness issue was:

"... I take the position that if the psychiatrists are summoned here first they ought to testify that he had the mentality to make the voluntary and knowing statement of the content to what he was saying at that time, then the voluntariness of it is important and it is admissible regardless of whether the defendant testifies or not, but if it isn't determined in advance, in view of the record we have regarding this man, then he is being prejudiced by an early presentation of it."

[2]The contents of the statement were:

"I was laying on the couch. I had both doors open because there had been a gas leak in there. I went to the door and Seaboy was at the door to his room. I said that whiskey is going to kill you and you had better quit that. He said you better go back in there and mind your own business or I'll take care of you. He had whiskey in his pocket. He reached in his pocket. I didn't know what he was going to do. I reached in and got my .38 that was laying on the chair. I aimed to shoot that whiskey out of his hands. When he started towards me I shot him again. He has told people all over Mullens that he don't like me. When he said that, I had had enough of him and just got tired of it."

nature of the evidence and the impact that nondisclosure would have on the trial preparation by the defense. In *State v. Dudick*, ____ W. Va. ____, 213 S.E.2d 458 (1975), we stated:

"Historically discovery in criminal cases has been largely within the discretion of the trial judge, State v. Cowan, ____ W. Va. ____, 197 S.E.2d 641 (1973), except with regard to any matter known to the prosecution which is obviously exculpatory in nature or which may be relevant and favorable to the defendant. [Citations omitted] In recent years this Court has tended to look with increasing favor upon the liberal use of discretion in criminal discovery while recognizing that the philosophy of full disclosure applicable to civil cases as embodied in the West Virginia Rules of Civil Procedure is inappropriate in criminal cases. . . ." [____ W. Va. at ____, 213 S.E.2d at 463]

In *State v. Cowan*, 156 W. Va. 827, 197 S.E.2d 641 (1973), the defendant wrote an incriminating letter while he was in jail. It came into the possession of the prosecutor during the trial, but was not made known to the defendant's attorney until after the prosecutor had used it to impeach the defendant on cross-examination. *Cowan* held the impeachment to be error, and discussed various aspects of discovery in a criminal case:

"Disclosure is required even in the absence of discovery motions. The most articulated standard is the one announced in the *Keogh* case [*United States v. Keogh*, 391 F.2d 138 (2d Cir. 1968)] where the court defined three categories of unconstitutional prosecutorial suppression: (1) Deliberate bad faith suppression for the very purpose of obstructing the defense, or the intentional failure to disclose evidence whose high probative value to the defense could not have escaped the prosecutor's attention; (2) deliberate refusal to honor a request for evidence which is material to guilt or punishment irrespective of the good or bad faith of the prosecutor in refus-

ing the request; and (3) suppression which is not deliberate and where no request was made, but where hindsight discloses that such evidence could have been put to significant use." [156 W. Va. at 833, 197 S.E.2d at 645]

*Cowan* also placed a great deal of reliance on our early case of *State v. Price*, 100 W. Va. 699, 131 S.E. 710 (1926), which involved a retrial of a murder case. Prior to the retrial the defense had requested a bill of particulars as to the evidence on which the State expected to rely. The prosecutor responded informally that he would rely on the evidence introduced at the first trial. However, at the retrial there was a material change in the evidence submitted by the State. *Cowan* quoted the following statement from *Price:*

"Where a party or his counsel are taken by surprise, whether by fraud or accident, on a material point or circumstance which could not reasonably have been anticipated, and when want of skill, care or attention cannot be justly imputed and injustice has been done, a new trial will be granted." [156 W. Va. at 837, 197 S.E.2d at 647, *quoting* 100 W. Va. at 702, 131 S.E. at 712]

As noted in *Cowan*, "*State v. Price, supra*, dealt neither with the right of a defendant for pre-trial discovery nor with the question of whether a prosecutor complied with an order for pre-trial discovery. . . ." [156 W. Va. at 837, 197 S.E.2d at 647]. *Price's* linchpin was "[s]urprise, whether by fraud or accident, on a material point or circumstance which could not reasonably have been anticipated . . . and [where] injustice has been done. . . ." [100 W. Va. at 702, 131 S.E. at 712]

Here, the sudden emergence of the confession after the opening statements were made involved more than surprise.[3] Because insanity was the chief defense relied

---

[3]We discussed some aspects of late disclosure in *State ex rel. Wilhelm v. Whyte*, ____ W. Va. ____, 239 S.E.2d 735 (1977). Here, even if the prosecutor's statement, that he found the confession in his file around midnight of the day preceding the trial, is accepted,

upon at the first and second trials, this issue played an important role in the factual determination of whether the confession was voluntary. Defense counsel objected to the introduction of the confession in the State's case so that he could have an opportunity to show through psychiatric testimony that the defendant was probably not sane at the time he gave the confession. The court overruled the objection and permitted the confession to be admitted in the State's case.

At least since *Blackburn v. Alabama,* 361 U.S. 199, 4 L. Ed. 2d 242, 80 S.Ct. 274 (1960), the United States Supreme Court has recognized that due process considerations will vitiate a confession where it is shown that the defendant was probably insane at the time he gave it:

> "In the case at bar, the evidence indisputably establishes the strongest probability that Blackburn was insane and incompetent at the time he allegedly confessed. Surely in the present stage of our civilization a most basic sense of justice is affronted by the spectacle of incarcerating a human being upon the basis of a statement he made while insane; and this judgment can without difficulty be articulated in terms of the unreliability of the confession, the lack of rational choice of the accused, or simply a strong conviction that our system of law enforcement should not operate so as to take advantage of a person in this fashion. ...

> "It is, of course, quite true that we are dealing here with probabilities. It is *possible,* for example, that Blackburn confessed during a period of complete mental competence. Moreover, these probabilities are gauged in this instance primarily by the opinion evidence of medical experts. But this case is novel only in the sense that the evidence of insanity here is compelling, for this

---

there is still no explanation offered as to why the confession was not disclosed to the court and counsel at the commencement of the trial.

Court has in the past reversed convictions where psychiatric evidence revealed that the person who had confessed was 'of low mentality, if not mentally ill,' *Fikes v Alabama*, supra (352 US at 196), or had a 'history of emotional instability,' *Spano v New York*, supra (360 US at 322). ..." [361 U.S. at 207-208, 4 L. Ed. 2d at 249-49, 80 S.Ct. at 280-81] [Emphasis in original]

Even prior to *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S.Ct. 1602 (1966), we held in *State v. Fortner*, 150 W. Va. 571, 148 S.E.2d 669 (1966), that a confession must be voluntary and that its voluntariness must be established in an *in camera* hearing. *See, e.g., State v. Boyd*, ____ W. Va. ____, 233 S.E.2d 710 (1977); *State v. Plantz*, 155 W. Va. 24, 180 S.E.2d 614 (1971). In *State v. Vance*, ____ W. Va. ____, 250 S.E.2d 146 (1978), we quoted Syllabus Point 5 of *State v. Starr*, ____ W. Va. ____, 216 S.E.2d 242 (1975):

"As a matter of constitutional law in this country, '[t]he State must prove, at least by a preponderance of the evidence, that confessions or statements of an accused ·which amount to admissions of part or all of an offense were voluntary before such may be admitted into the evidence of a criminal case.' Syl. pt. 5, *State v. Starr*, W. Va., 216 S.E.2d 242 (1975), *citing, Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). ..." [____ W. Va. at ____, 250 S.E.2d at 149]

As the *Blackburn* Court and others have held, where the defendant's sanity at the time he gave the confession is an issue, it is error to admit the confession without considering the sanity issue at an *in camera* hearing. *See, e.g., Iverson v. North Dakota*, 480 F.2d 414 (8th Cir. 1973), *cert. denied*, 414 U.S. 1044, 38 L. Ed. 2d 335, 94 S.Ct. 549; *United States v. Silva*, 418 F.2d 328 (2d Cir. 1969); *State v. Walton*, 247 N.W.2d 736 (Iowa 1976); *Commonwealth v. Daniels*, 366 Mass. 601, 321 N.E.2d 822 (1975).

We do not, however, read *Blackburn* or the cases that follow it to require that when the state seeks to introduce a defendant's confession, it must produce psychiat-

ric testimony at an *in camera* hearing to show that the defendant was sane at the time he gave the confession.

As we more fully explain in the next section of this opinion, the general rule is that there is an assumption that a person is sane and, consequently, it is not until some evidence of his insanity is produced that the state has the burden of proving his sanity. *Davis v. United States*, 160 U.S. 469, 40 L. Ed. 499, 16 S.Ct. 353 (1895); *Edwards v. Leverette*, ____ W. Va. ____, 258 S.E.2d 436 (1979).

Furthermore, since the voluntariness of a confession need only be established by a preponderance of the evidence at the *in camera* hearing, *State v. Vance, supra,* and *State v. Starr, supra,* the defendant's sanity need only be established by a preponderance of the evidence at the *in camera* hearing.[4]

In this case, it was error to deprive the defendant of an opportunity to produce psychiatric testimony at the *in camera* hearing to show that the confession was not voluntary because he was probably insane at the time he gave it.

## II

In *Edwards v. Leverette*, ____ W. Va. ____, 258

---

[4]In *State ex rel. Walton v. Casey*, ____ W. Va. ____, 258 S.E.2d 114 (1979), we considered W. Va. Code, 27-6A-1, *et seq.*, which relates to mental commitments of persons charged with a crime, and concluded in Syllabus Point 1:

"A criminal trial is unwarranted when pre-trial psychiatric examinations clearly reveal by a preponderance of the evidence, that the accused at the time the crime was committed was not criminally responsible for his acts."

*Walton* involved a rather unusual situation where all of the psychiatric testimony indicated that the defendant was not criminally responsible at the time he committed the crime. In the normal case where the insanity issue is raised to block the confession and the testimony in regard to the sanity of the defendant is in conflict, the trial court will weigh the evidence to determine if the State has proved the defendant's sanity by a preponderance of the evidence.

S.E.2d 436, 439 (1979), we reviewed our rule on the burden of proof as to insanity, and concluded that it was not in accord with the majority view:

> "There exists in the trial of an accused a presumption of sanity. However, should said accused offer evidence that he was insane, the presumption of sanity disappears and the burden is on the prosecution to prove beyond a reasonable doubt that the defendant was sane at the time of the offense. Our research reveals that this is clearly the majority view.

> "As long ago as 1895, the Supreme Court, in *Davis v. United States,* 160 U.S. 469, 16 S.Ct. 353, 40 L. Ed. 499, said in relation to the presumption of sanity: 'But to hold that such presumption must absolutely control the jury until it is overthrown or impaired by evidence sufficient to establish the fact of insanity beyond all reasonable doubt or to the reasonable satisfaction of the jury, is in effect to require him to establish his innocence, by proving that he is not guilty of the crime charged.' See *United States v. McCracken,* 488 F. 2d 406 (5th Cir. 1974); *Mason v. United States,* 402 F. 2d 732 (8th Cir. 1968); *Webber v. United States,* 395 F. 2d 397 (10th Cir. 1968); *Hall v. United States,* 295 F. 2d 26 (4th Cir. 1961); *Commonwealth v. Demmitt,* 456 Pa. 475, 321 A. 2d 627 (1974); *Dolchok v. State,* 519 P.2d 457 (Alaska 1974); *State v. Dubina,* 164 Conn. 95, 318 A. 2d 95 (1972). See also 10 Suffolk University L. Rev. 1037 et seq." [____ W. Va. at ____, 258 S.E.2d at 439]

*See also Young v. State,* 258 Ind. 246, 280 N.E.2d 595 (1972); *State v. Thomas,* 219 N.W.2d 3 (Iowa 1974); *Fowler v. State,* 237 Md. 508, 206 A.2d 802 (1965); *Commonwealth v. McHoul,* 352 Mass. 544, 226 N.E.2d 556 (1967); *State v. Jacobs,* 190 Neb. 4, 205 N.W.2d 662 (1973), *cert. denied,* 414 U.S. 860, 38 L. Ed. 2d 111, 94 S.Ct. 75; *People v. Silver,* 33 N.Y. 2d 475, 354 N.Y.S.2d 915, 310 N.E.2d 520 (1974).

Essentially *Edwards* followed the reasoning of *State v. Kirtley*, ____ W. Va. ____, 252 S.E.2d 374 (1978), which dealt with the burden of proof in regard to the issue of self-defense. As stated in *Kirtley*, where there is a defense that provides an absolute justification for the killing, then "once sufficient evidence is in the case to create a reasonable doubt on this issue the state, in order to obtain a guilty conviction, must prove beyond a reasonable doubt that the killing was not justified." [____ W. Va. at ____, 252 S.E.2d at 380]

The same rule applies to a defense such as insanity, which constitutes a bar to a criminal conviction. The purpose of the rule is to correlate the State's burden of proof beyond a reasonable doubt to all the facts necessary to establish the defendant's culpability. These facts include not only the essential elements of the offense charged, but also a negation beyond a reasonable doubt of those defenses which, if shown, would constitute an absolute bar to conviction or justification for the crime.

There is no question but that *Edwards'* modification of the burden of proof can be considered as dictum, since the case did not turn on this point. *Edwards* recognized that the rule relating to the burden of proof of insanity did not rise to a constitutional level. Edwards thus did not obtain the advantage of the rule since he was proceeding in habeas corpus to challenge his conviction. This same principle was recognized in *Kirtley* as to the self-defense issue, where we stated:

> "[W]e wish to make clear that our announced rule on allocating the burden of proof on the issue of self-defense is not bottomed on constitutional due process principles as it has been in some jurisdictions. ... Consequently, we are not involved with extending full retroactivity to today's rule, as have those courts which have placed their holdings on due process principles. ..." [____ W. Va. ____, 252 S.E.2d at 381]

Our rule with regard to the burden of proof on the issue of insanity at trial should not be confused with the

evidentiary issue of insanity as it may bear upon the voluntariness of the defendant's confession, which we have discussed in the preceding section. In this connection, the case of *State ex rel. Walton v. Casey*, _____ W. Va. _____, 258 S.E.2d 114 (1979), should not be interpreted as applying to the burden of proof of insanity at the trial. As discussed in Note 4, *Walton* involved a pretrial hearing under W. Va. Code, 27-6A-1 *et seq.*, to determine the mental competency of the defendant. Because both the *in camera* hearing on the voluntariness of the confession and a statutory hearing on the defendant's mental competency are conducted without a jury, the trial court exercises a fact-finding function, and his decision is interlocutory and therefore not appealable nor controllable by a writ of prohibition.

In the present case, the defendant tendered an instruction relating to the burden of proof of insanity. In essence, the instruction required the State to prove the defendant's sanity beyond a reasonable doubt if the jury believed there was some evidence that the defendant was insane. The court refused this instruction.

While we do not accord full retroactivity to *Edwards*, we do apply it here, since the point was properly raised at the trial and preserved on appeal.

### III

Of even more significance on the insanity question is the contention that the State failed to carry its burden of proving the defendant sane beyond a reasonable doubt. Unlike the first trial, the State offered no expert testimony to oppose the psychiatric testimony of the defendant.

The defense psychiatrist, Dr. Leslie J. Borbely, testified as to the mental and physical history of the defendant from records obtained from Buffalo State Hospital, a New York mental facility. It appears that in 1962, the defendant suffered a head injury in an automobile accident. The injury resulted in dizziness, headaches and a feeling of "pressure inside his head." He was hospital-

ized at a Myer Memorial Hospital from 1963 to 1967. In October of 1967, he entered Buffalo State Hospital, where he was diagnosed to have psychosis due to trauma, personality disorder, and convulsive and psychotic seizures. In July of 1970, he was discharged in the care of his brother.

Based on his initial examination of the defendant some seven months after the homicide, Dr. Borbely stated that defendant's memory was poor, that he omitted words in his speech, and that he had an impaired judgment and intellectual ability, and that it was his opinion that defendant was suffering from brain damage. Based on his tests and clinical observations, he further stated that he believed the defendant to be mildly retarded and suffering from a paranoid type of schizophrenia which caused him to feel that people "want to get rid of him."

The doctor, when asked if the defendant "was suffering from mental disease or defect that at that time would have prevented him from appreciating the wrongfulness of his act,"[5] replied: "At the time of my examination, I can say yes." In response to a hypothetical question involving the defendant's actions on the day of the shooting, he stated that he assumed the defendant was then suffering from the same mental defect or disease and could not have appreciated the wrongfulness of his actions.

On the State's cross-examination, the psychiatrist admitted in effect that he could not state to a reasonable degree of medical certainty that the defendant was insane on the day of the homicide. The doctor's response was that there was a "probability" or a "good possibility" that the defendant was insane at that time, and that he could have had a more definite opinion if he had examined him prior to the homicide.[6]

[5]This was a part of the insanity test approved in *State v. Grimm*, 156 W. Va. 615, 195 S.E.2d 637, 647 (1973).

[6]The defendant's psychiatric testimony raised more than some evidence of insanity and would have been sufficient under a pre-

The State offered no testimony, either lay or expert, to show that the defendant was sane at the time of the homicide. This case, therefore, presents a rather unique factual situation where the insanity testimony of the defense stands unrebutted. Moreover, it was demonstrated that the defendant's psychiatric disability had existed for a considerable period of time before the homicide and that its origin was organic brain damage arising from an automobile accident.

Most courts confronted with conflicting psychiatric testimony have held that the issue is one for jury resolution. Annot., 17 A.L.R.3d 146 (1968). When the state does not offer countervailing psychiatric testimony, however, the evidentiary problem becomes more acute, since the state's obligation is to prove sanity beyond a reasonable doubt once the defendant has shown some evidence of insanity.

There are those occasions where the psychiatric testimony offered by the defendant is so demolished by cross-examination that the state need not counter with its own expert. *See United States v. Shackelford*, 494 F.2d 67 (9th Cir. 1974), *cert. denied*, 417 U.S. 934, 41 L. Ed. 2d 237, 94 S.Ct. 2647. However, such did not happen in this case.

Because of the variegated nature of the evidence surrounding insanity, it is not possible to fashion a particular rule on whether the state has failed to carry its burden of proving insanity beyond a reasonable doubt. It does appear that where the defendant has offered evidence to meet the legal insanity test, shows a mental disease or defect that has its origins in some organic injury or disease, and shows that he has undergone mental treatment, all of which pre-existed the date of

---

ponderance test, which is the standard in a civil case. *Cf. Harper v. State Workmen's Compensation Commissioner*, ____ W. Va. ____, 234 S.E.2d 779 (1977); *Pygman v. Helton*, 148 W. Va. 281, 134 S.E.2d 717 (1964). The defendant was not required to have his psychiatrist state to a reasonable degree of medical *certainty* that he was insane.

the crime, the failure of the state to produce countervailing testimony as to his competence will be fatal to its case. *Phillips v. United States*, 311 F.2d 204 (10th Cir. 1962); *Alto v. State*, 565 P.2d 492 (Alaska 1977); *People v. Ware*, 187 Colo. 28, 528 P.2d 224 (1974); *People v. Silver*, 33 N.Y.2d 475, 354 N.Y.S.2d 915, 310 N.E.2d 520 (1974); *People v. Hari*, 30 A.D.2d 1046, 294 N.Y.S. 2d 759 (1968); *Kind v. State*, 595 P.2d 960 (Wyo. 1979). The Colorado court in *People v. Ware, supra,* stated the matter in this fashion:

> "The kind and quantity of evidence of sanity which the prosecution must produce to meet its burden and take the issue to the jury will vary in different cases. The presumption of sanity will stand if no evidence of insanity is offered by the defense. Some competent lay evidence of sanity may suffice when the defendant has introduced only token evidence of insanity. However, this same evidence of sanity may be totally inadequate when the defendant's evidence of insanity is substantial. *See Wright* [*Wright v. United States*, 102 U.S. App. D.C. 36, 250 F.2d 4 (1957)], *supra.*" [187 Colo. at 31–32, 528 P.2d at 226]

In view of the State's failure to offer any evidence to sustain its burden of sanity once the defendant's insanity had been shown, we conclude that the State's case comes within the principles of *Burks v. United States*, 437 U.S. 1, 57 L. Ed. 2d 1, 98 S.Ct. 2141 (1978). In *Burks*, the Court concluded that the failure of the government to rebut the defendant's insanity beyond a reasonable doubt resulted in an evidentiary insufficiency which barred retrial under double jeopardy principles.[7]

---

[7]In *Burks v. United States*, 437 U.S. 1, 57 L. Ed. 2d 1, 98 S.Ct. 2141 (1978), the Court summarized the government's sanity evidence:

"In rebuttal the Government offered the testimony of two experts, one of whom testified that although petitioner possessed a character disorder, he was not mentally ill. The other prosecution witness acknowledged a character disorder in petitioner, but gave a rather ambiguous answer to the question of whether Burks had

In *State v. Frazier,* ____ W. Va. ____, 252 S.E.2d 39 (1979), we discussed at some length the double jeopardy principles involved in *Burks* and its companion case, *Greene v. Massey,* 437 U.S. 19, 57 L. Ed. 2d 15, 98 S.Ct. 2151 (1978), and concluded in its Syllabus Points 4 and 5:

> "The Double Jeopardy Clause of the Federal and this State's Constitutions forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding."

> "In order to determine if there is evidentiary insufficiency that will bar a retrial under double jeopardy principles, such determination is made upon the entire record submitted to the jury and not upon the residual evidence remaining after the appellate court reviews the record for evidentiary error."

Even though double jeopardy principles bar a retrial of the defendant in this case, the State is not precluded from initiating involuntary mental commitment procedures pursuant to W. Va. Code, 27-6A-3(b). In at least one instance where an appellate court concluded as a matter of law that the state had failed to carry its burden of proof on sanity, the court stayed the mandate of the judgment of acquittal for sixty days in order to permit the state an opportunity to initiate involuntary commitment procedures. *Alto v. State,* 565 P.2d 492, 503 (Alaska 1977).

We believe this disposition to be appropriate in light of our statute, W. Va. Code, 27-6A-3(b). Therefore, the mandate of this Court ordering a judgment of acquittal shall be stayed for a period of sixty days from the date of its entry.

*Reversed and remanded
with directions.*

---

been capable of conforming his conduct to the law. Lay witnesses also testified for the Government, expressing their opinion that petitioner appeared to be capable of normal functioning and was sane at the time of the alleged offense." [437 U.S. at 3, 57 L. Ed. 2d at 4, 98 S.Ct. at 2143]