359 S.E.2d 865

**STATE of West Virginia**

v.

**Carla S. MASSEY.**

**No. 17093.**

Supreme Court of Appeals of West Virginia.

July 22, 1987.

428

Mary Rich Maloy, Asst. Atty. Gen., for appellant.

Charles M. Walker, Charleston, for appellee.

MILLER, Justice:

Carla S. Massey appeals her May 1, 1985 conviction for aggravated robbery. She assigns several errors, viz., that an instruction on nonaggravated robbery, a lesser included offense, ought to have been given by the court; that the State's rebuttal testimony was prejudicial; that her temporary insanity instruction was improperly refused; that her confession was involuntary and should have been suppressed; that two in-court identifications were tainted and improperly admitted; and that other procedural error was committed during trial. We hold that there is no reversible error. However, we find the trial court erred in its conclusion that the defendant was ineligible for probation, and remand for resentencing.

### I.

On July 2, 1983, Vanessa Miller was working as a clerk at a Shop-A-Minit convenience store in Kanawha City. At approximately 8:30 a.m., a woman approached her while she was sweeping outside of the entranceway and asked if the store was open. Ms. Miller replied affirmatively and the two women walked together into the store. The woman had blond hair, was of average height, and wore blue jeans, a blue and white jersey-type shirt, and a blue bandana.

Within a few minutes, the woman walked to the check-out counter and pulled a handgun from her purse. She demanded that Ms. Miller give her the money in the cash register. Ms. Miller opened the register, removed $130 in cash, and handed it to her. The woman then ordered Ms. Miller into a cooler in the rear of the store and fled.

Ms. Miller promptly telephoned the police and reported the robbery. After their arrival, the police were advised that the woman had secured a taxi in the area of the robbery and they were able to apprehend her several minutes later while she was still in the taxi.

Shortly after her arrest, the defendant was advised of her *Miranda* rights, signed a waiver of rights form, and gave a statement to the police. She admitted having robbed the store, but stated that she had used a toy gun. She commented that she was "desperate for money" and had planned the robbery since the early morning. A motion to suppress the confession was denied after a lengthy hearing.

At trial, the defendant relied upon a defense of temporary insanity. She testified that she had been physically abused by her husband, and that he had made sexual advances toward her oldest daughter. Later, in March, 1983, she and her two daughters left the family home in Roane County. They arrived in the Charleston area in June, 1983, where they resided at a local YMCA and more recently at a motel. Her sole sources of income were welfare benefits and food stamps, which she received on a monthly basis.

She testified that on the morning of July 2, 1983, she left her motel room to purchase a package of cigarettes. When she arrived at the Shop-A–Minit store, she shopped briefly for other needed grocery items. As she approached the check-out register, she pulled a toy gun from her purse which she had found two days before. During the course of the robbery, she was not in control of her actions. As she put it: "It seemed like I was watching it." It had not been her intention to rob the store, and the events of the day remained largely unclear. Her testimony was impeached in large measure by her confession.

Thomas S. Knapp, M.D., a psychiatrist, testified that based upon his examination of the defendant, she lacked a substantial

capacity to appreciate the wrongfulness of her conduct or to conform her conduct to the requirements of the law. Ralph S. Smith, Jr., M.D., a State rebuttal witness, was of the opinion that the defendant had suffered from a "depersonalization experience," but that she was criminally responsible for her acts on the day of the robbery.

On May 1, 1985, the jury returned a verdict of guilty with a "recommendation of mercy." [1] At a sentencing hearing held on May 24, 1985, the trial judge gave consideration to placing the defendant on probation, but determined that she was ineligible due to the crime for which she was convicted. He then sentenced the defendant to ten years imprisonment, the minimum penalty prescribed by law.

## II.

The defendant maintains that the trial court erred in refusing to instruct the jury that it might return a verdict on nonaggravated robbery, a lesser included offense. We conclude that the evidence presented at trial did not support a lesser included offense instruction.

■ W.Va.Code, 61–2–12, defines "aggravated robbery" as "commit[ting], or attempt[ing] to commit, robbery by partial strangulation or suffocation, or by striking or beating, or by other violence to the person, or *by the threat or presenting of firearms*, or other deadly weapon or instrumentality." Nonaggravated robbery is a robbery undertaken "in any other mode or by any other means." Thus, aggravated robbery requires the use of physical force against the victim or the threat of a deadly weapon; nonaggravated robbery requires only that the victim be placed in fear of bodily harm. We summarized these principles in Syllabus Point 3 of *State v. Harless*, 168 W.Va. 707, 285 S.E.2d 461 (1981):

"W.Va.Code, 61–2–12, enacted in 1931, divides robbery into two separate classes calling for different penalties: (1) robbery by violence or by the use of a dan-

---

1. Our robbery statute, W.Va.Code, 61–2–12, does not provide for jury recommendations of mercy. The handwritten recommendation on the verdict form was treated as surplusage, but was given weight by the trial court during sentencing.

gerous weapon, and (2) all other robberies."

We have held that nonaggravated robbery is a lesser included offense of aggravated robbery. *E.g., State v. Spicer,* 162 W.Va. 127, 245 S.E.2d 922 (1978). Our rule on giving a lesser included offense instruction is stated in Syllabus Point 2 of *State v. Neider,* 170 W.Va. 662, 295 S.E.2d 902 (1982):

> "Where there is no evidentiary dispute or insufficiency on the elements of the greater offense which are different from the elements of the lesser included offense, then the defendant is not entitled to a lesser included offense instruction."

It is the defendant's position that a verdict on nonaggravated robbery would have been sustainable if the jury had concluded the robbery was committed with the use of a toy handgun. This is an incorrect statement of the law. We have specifically held that the "threat ... of firearms," as the phrase is used in W.Va.Code, 61–2–12, does not require the actual use or presentment of a firearm. It requires only such action by the defendant as would reasonably lead the victim to believe he had possession of a firearm.

In both *State v. Combs,* 175 W.Va. 765, 338 S.E.2d 365 (1985), and *State v. Young,* 134 W.Va. 771, 61 S.E.2d 734 (1950), the defendant simulated the use of a gun by placing his hand in his pocket and indicating to the victim that he had a firearm. We affirmed the convictions utilizing the law expressed in Syllabus Point 1 of *Young:*

> "Under Code, 61–2–12, one who enters a home or place of business of another and makes a gesture indicating that he has in his possession a firearm or other deadly weapon, immediately orders the person or persons there in charge to take

a certain position, remain there, and not follow him, and then takes physical possession of money or other things of value then on said premises and in the control of the person or persons in charge thereof, is guilty of armed robbery. The threat of the use of a firearm or other deadly weapon constitutes robbery by putting in fear."

■ There is no dispute here that the defendant, in robbing the Shop-A-Minit store, presented an object which resembled a handgun and which the victim reasonably believed to be a handgun. Even the defendant concedes these points. Consequently, there was no evidence from which the jury might have concluded that the robbery was committed by means other than a "threat ... of firearms." We, therefore, conclude that there was insufficient evidence to support an instruction on nonaggravated robbery, and the trial court did not err in refusing the defendant's proposed instruction thereon.[2]

### III.

The defendant next contends that the court erred in permitting the victim, Ms. Miller, and Officer Jerry Riffe to testify during rebuttal. It is alleged that their testimony did not serve to controvert evidence presented by the defendant and that it was therefore improper and prejudicial.

■ During cross-examination, the State sought to impeach the defendant's testimony with the statement she had given to the police immediately after her arrest. When questioned about the statement, she testified that it was the product of coercion and that the dialogue by the police had been unduly suggestive. On rebuttal, the State called Officer Riffe, the police detec-

---

**2.** The defendant also assigns as error the court's refusal to include in its jury charge the statutorily prescribed punishments for aggravated and nonaggravated robbery. We have approved jury instructions which have included the possible punishment upon conviction in homicide cases, *e.g., State v. Belcher,* 161 W.Va. 660, 245 S.E.2d 161 (1978) (citing cases), but such instructions are in aid of the jury's duty to render a recommendation regarding the punishment.

Where, as in the case of robbery, the right to fix the punishment rests exclusively with the trial court, the general rule is that a defendant is not entitled as of right to an instruction defining the possible penalties. *See* 75 Am.Jur.2d *Trials* § 888 (1974); Annot., 17 A.L.R. 1117 (1922) (mercy recommendations in criminal trials); Annot., 87 A.L.R. 1362 (1933) (same); Annot., 138 A.L.R. 1230 (1942) (same).

tive who had conducted the post-arrest questioning of the defendant. Officer Riffe testified that prior to initiating the questioning, he was briefed by two patrolmen, but did not speak with any of the witnesses. He denied that he had suggested to the defendant any answers she should give to the questions put to her.

The weapon used in the robbery was never recovered and the defendant, in her testimony, stated that the pistol she had pulled from her purse was merely a toy. Ms. Miller was recalled during rebuttal. She testified that, based upon her knowledge and experience, the gun used by the defendant was real and not a toy.

We have traditionally accorded to the trial judge broad discretion in the admission of rebuttal evidence. As we held in Syllabus Point 4 of *State v. Peyatt*, 173 W.Va. 317, 315 S.E.2d 574 (1983):

> " 'The admissibility of evidence as rebuttal is within the sound discretion of the trial court, and the exercise of such discretion does not constitute ground for reversal unless it is prejudicial to the defendant.' Syl. pt. 4, *State v. Blankenship*, 137 W.Va. 1, 69 S.E.2d 398 (1952), *overruled on other grounds, State v. McAboy*, 160 W.Va. 497, 236 S.E.2d 431, 432 (1977)."

We conclude that the State's rebuttal evidence in this case was proper and resulted in no prejudice to the defendant. Officer Riffe's testimony fairly met the defendant's suggestion that her statement to the police was tainted by improper interrogation techniques. Likewise, Ms. Miller's rebuttal testimony that the gun was real refuted the defendant's prior testimony that it was only a toy. The trial court did not abuse its discretion in admitting this rebuttal evidence.

## IV.

The trial court refused the defendant's proposed insanity instruction, and the defendant assigns this refusal as error. The defendant offered a rather lengthy instruction on insanity, which was drawn from *United States v. Brawner*, 471 F.2d 969 (D.C.Cir.1972). As originally offered, the instruction would have defined a mental disease or defect as "any abnormal condition of the mind, regardless of its medical label, which ... substantially impairs behavior controls." It would also have outlined the burden of proof and placed upon the defendant the burden of showing, by a preponderance of the evidence, that she lacked substantial capacity to appreciate the criminality of her conduct or to conform her conduct to the law's requirements.

■ This instruction was properly refused for two reasons. First, our cases have never accepted a definition of mental disease or defect which is tied to an impairment of "behavior controls." We have traditionally used the test for insanity as contained in Syllabus Point 2, in part, of *State v. Myers*, 159 W.Va. 353, 222 S.E.2d 300 (1976):

> "When a defendant in a criminal case raises the issue of insanity, the test of his responsibility for his act is whether, at the time of the commission of the act, it was the result of a mental disease or defect causing the accused to lack the capacity either to appreciate the wrongfulness of his act or to conform his act to the requirements of the law...."

*See also State v. Grimm*, 156 W.Va. 615, 195 S.E.2d 637 (1973), *overruled on other grounds, State v. Nuckolls*, 166 W.Va. 259, 273 S.E.2d 87 (1980).[3] Moreover, the term

---

**3.** In the text of *Grimm,* 156 W.Va. at 628, 195 S.E.2d at 645, the Court indicated its approval of Section 4.01 of the Model Penal Code of 1962, which is quoted:

> "(1) A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality [wrongfulness] of his conduct or

to conform his conduct to the requirements of law."

When this language was transposed to Syllabus Point 5 of *Grimm,* it did not precisely track the language of Section 4.01, but instead stated that if "at the time the offense was committed the accused was suffering from such a diseased and defective condition of the mind that he was incapable of knowing the nature and consequences of his act, the jury should find him not

"behavior controls" was ill defined, and was neither mentioned nor approved by the defendant's own psychiatrist.

■ Second, and perhaps more importantly, the instruction misapplies the burden of proof on the issue of insanity. We held in Syllabus Point 2 of *State v. Milam,* 163 W.Va. 752, 260 S.E.2d 295 (1979):

"There exists in the trial of an accused a presumption of sanity. However, should the accused offer evidence that he was insane, the presumption of sanity disappears and the burden is on the prosecution to prove beyond a reasonable doubt that the defendant was sane at the time of the offense."

For these reasons, the instruction as offered was properly rejected. The court amended the instruction to remove the reference to "behavior controls" and to properly explain the burden of proof mandated by *Milam.* The traditional definition of insanity, as established in *Myers,* was included in one of the State's instructions. There was no error.

### V.

■ The defendant also argues that her confession was improperly admitted, as she "was not in full possession of her faculties" at the time it was given to the police. Essentially, she argues that her mental impairment prevented her from making a voluntary statement and an intelligent waiver of her privilege against self-incrimination.

At the suppression hearing, the State called as witnesses two of the police officers involved in the arrest. They stated that the defendant was cooperative during the investigation, that she did not appear to be under the influence of alcohol or drugs, and that she understood the *Miranda* rights which were read to her. An officer who observed a second reading of the *Miranda* rights at the station corroborated her voluntary waiver of rights and the absence of any improper threats or promises. Officer Riffe testified generally regarding the conduct of the interrogation. He reiterated that the defendant's waiver of rights was totally voluntary and that the statement was not induced in any way.

It was the defendant's testimony that, at the time she gave the statement, she did not fully understand her right to an attorney or the potential consequences of a confession. She also intimated that the questioning had been suggestive and that the police had used improper threats. Dr. Knapp testified that the defendant lacked the capacity to give a voluntary statement. However, on cross-examination he admitted that he was only "fifty-one percent persuaded" of the defendant's insanity. He also stated that, after examining the defendant in November, 1984, he had originally determined that she was sane and competent to stand trial. The judge ruled that the statement was knowingly and voluntarily given, and denied the motion to suppress.

It is well settled that, to be admissible, a confession must have been voluntary and the product of a knowing and intelligent waiver of rights by the defendant. *State v. Boyd,* 167 W.Va. 385, 280 S.E.2d 669 (1981). The State bears the initial burden of proving by a preponderance of the evidence that the confession was voluntary, as we stated in Syllabus Point 1 of *State v. Vance,* 162 W.Va. 467, 250 S.E.2d 146 (1978):

" 'The State must prove, at least by a preponderance of the evidence, that confessions or statements of an accused which amount to admissions of all or a part of an offense were voluntary before such may be admitted into the evidence of a criminal case.' Syl. pt. 5, *State v. Starr,* [158] W.Va. [905], 216 S.E.2d 242 (1975)."

Where the defendant contends that a confession was involuntary due to insanity or mental impairment, the State must prove the defendant's sanity by a preponderance of the evidence. *State v. Milam,* 163 W.Va. at 759, 260 S.E.2d at 299.

We do not believe the trial court erred in holding that the State had sustained its burden. The State is not required, at a

guilty." We confirm the language utilized in Syllabus Point 2 of *Myers, supra.*

pretrial suppression hearing, to produce psychiatric testimony on the issue of the defendant's sanity. *Milam*, 163 W.Va. at 758–59, 260 S.E.2d at 299. All of the police officers offered credible lay testimony regarding the defendant's sanity during both the pre- and post-arrest periods. We have held in several cases that lay testimony is competent on the insanity issue. *E.g., State v. Fugate*, 103 W.Va. 653, 138 S.E. 318 (1927); *State v. Price*, 92 W.Va. 542, 115 S.E. 393 (1922). The defendant's psychiatric expert, Dr. Knapp, after initially concluding that the defendant was sane, stated she was not competent to give a voluntary statement. However, the trial court was at liberty to consider the great reluctance with which he arrived at his conclusion and the contrary conclusion he had reached previously. We find no error in the trial court's ruling.

## VI.

The defendant objects to in-court identifications by two witnesses upon the ground they were tainted by improper out-of-court identification procedures. Within thirty minutes of the robbery, the police requested the victim, Ms. Miller, to accompany them to identify a suspect. When she arrived, only two police officers and the defendant were present. Ms. Miller immediately identified the defendant as the woman who had robbed the store.

In Syllabus Point 4 of *State v. Boyd, supra,* we restated our general rule in judging the admissibility of an in-court identification based upon an allegedly improper prior identification:

"In determining whether an out-of-court identification of a defendant is so tainted as to require suppression of an in-court identification a court must look to the totality of the circumstances and determine whether the identification was reliable, even though the confrontation

procedure was suggestive, with due regard given to such factors as the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. Syl. pt. 1, *State v. Rickman,* [167] W.Va. [128], 278 S.E.2d 880 (1981); Syl. pt. 1, *State v. Kennedy,* [162] W.Va. [244], 249 S.E.2d 188 (1978), citing Syl. pt. 3, *State v. Casdorph,* [159] W.Va. [909], 230 S.E.2d 476 (1976)."

The out-of-court identification procedure utilized here was suggestive, but sufficiently reliable to warrant admission of the in-court identification. Ms. Miller had ample opportunity to view the perpetrator both before and after the robbery. She observed the woman for fifteen minutes as she approached the store, spoke with her, shopped, and committed the crime. Significantly, the woman did not wear a mask or any apparel to hide her face. Ms. Miller also had a greater degree of attention fixed upon the woman than might ordinarily be expected, due to her suspicious behavior. Ms. Miller provided an accurate description of the perpetrator, including her age, weight, hair color, and a detailed summary of her clothing. Her identification of the defendant at the arrest scene was immediate and unequivocal. Lastly, the identification took place only half an hour after the robbery while the impressions of the event were still fresh in her mind. We conclude that her identification was reliable and no error was committed.[4]

## VII.

It is argued that the trial judge impermissibly injected himself into the trial and, by his questioning of a witness, caused prejudice to the defendant. Judges in this State are charged with the duty to

4. In addition, the defendant objects to an in-court identification by Gaynor Tilden Odell. He testified that on the day of the robbery, a woman arrived at his house in Kanawha City and requested that he call a taxi on her behalf. Over a week later, he identified the woman as the

defendant based upon a photographic array. We are not provided with copies of the photographs nor with an adequate description of the array and, therefore, decline to address the question whether they were suggestive.

direct the orderly presentation of evidence and argument during all phases of the trial, as we elaborated upon in Syllabus Point 4 of *State v. Burton*, 163 W.Va. 40, 254 S.E.2d 129 (1979):

> "A trial judge in a criminal case has a right to control the orderly process of a trial and may intervene into the trial process for such purpose, so long as such intervention does not operate to prejudice the defendant's case. With regard to evidence bearing on any material issue, including the credibility of witnesses, the trial judge should not intimate any opinion, as these matters are within the exclusive province of the jury."

*See also State v. Banjoman*, 178 W.Va. 311, 359 S.E.2d 331 (1987).

A judge is not only authorized to ask questions of a witness from the bench, but may in some instances be required to do so. *State v. Grimm, supra.* He may not, however, assume the role of an advocate and if by his questioning he intimates an opinion, a reversal may be warranted. *E.g., State v. Sandler*, 175 W.Va. 572, 336 S.E.2d 535 (1985); *State v. Starcher*, 168 W.Va. 144, 282 S.E.2d 877 (1981); *State v. McGee*, 160 W.Va. 1, 230 S.E.2d 832 (1976), *overruled on other grounds, State v. McAboy*, 160 W.Va. 497, 236 S.E.2d 431 (1977).

Only one example of judicial overreaching is cited by the defendant in her brief. During the suppression hearing, the judge examined Dr. Knapp at length regarding the basis of his medical opinion that the defendant's statement to the police had been involuntary. This interrogation by the court took place outside of the jury's presence and the testimony adduced in the suppression hearing was never disclosed to the jury. We emphasize that the primary object of the rule in *McGee* and its progeny is to prevent prejudicial impact upon the jury. As we said in *McGee:* "The trial judge in a criminal trial must consistently be aware that he occupies a unique position in the minds of the jurors and is capable, because of his position, *of unduly influencing jurors in the discharge of their duty as triers of fact."* 160 W.Va. at 6, 230 S.E.2d at 835–36. (Emphasis added). While we do not hold that a judge may never commit reversible error in questioning witnesses in camera, it is apparent that no prejudice flowed from the questioning here involved.

## VIII.

At the sentencing hearing on May 24, 1985, the trial court concluded that the defendant was rendered ineligible for probation due to her conviction for aggravated robbery. We believe the trial court held a mistaken view of the defendant's eligibility for probation, and remand to allow the court to resentence the defendant.

The defendant was not found, by use of a special jury interrogatory under W.Va.Code, 62–12–2(b) and –2(c)(1) (1981), to have committed the robbery by the use, presentment, or brandishing of a firearm.[5] We have held that such an interrogatory is a prerequisite in order to bring into play the bar against probation authorized by these statutory provisions. *See*

---

5. W.Va.Code, 62–12–2(b) and –2(c)(1) (1981), provide:

> "(b) The provisions of subsection (a) of this section to the contrary notwithstanding, any person who commits or attempts to commit a felony with the use, presentment or brandishing of a firearm shall be ineligible for probation. Nothing in this section shall apply to an accessory before the fact or a principal in the second degree who has been convicted as if he were a principal in the first degree if, in the commission of or in the attempted commission of the felony, only the principal in the first degree used, presented or brandished a firearm.

> "(c)(1) The existence of any fact which would make any person ineligible for probation under subsection (b) of this section because of the commission or attempted commission of a felony with the use, presentment or brandishing of a firearm shall not be applicable unless such fact is clearly stated and included in the indictment or presentment by which such person is charged and is either (i) found by the court upon a plea of guilty or nolo contendere, or (ii) found by the jury, if the matter be tried before a jury, upon submitting to such jury a special interrogatory for such purpose or (iii) found by the court, if the matter be tried by the court, without a jury."

Syllabus Point 13, *State v. Davis*, 176 W.Va. 454, 345 S.E.2d 549 (1986).[6] Furthermore, there is no contention that the defendant had been convicted of a felony within five years of the date of the present felony conviction, which would render her ineligible for probation under W.Va.Code, 62–12–2(a) (1981).[7]

The only argument against probation consideration was the language of W.Va. Code, 62–12–2(a) (1981), which provides: "All persons ... who are found guilty of or plead guilty to any felony, *the maximum penalty for which is less than life imprisonment,* ... shall be eligible for probation." (Emphasis added). Aggravated robbery is an offense punishable by confinement in the penitentiary for "not less than ten years." W.Va.Code, 61–2–12. Given the openendedness of the punishment, the trial court apparently concluded that the maximum penalty was life imprisonment, thereby excluding the defendant from consideration for probation.

We addressed this question in a related context in *State v. Turley*, 177 W.Va. 69, 350 S.E.2d 696 (1986). There, the State argued that since the defendant, a juvenile, had been convicted of aggravated robbery, he was ineligible for youthful offender status under the Youthful Male Offender Act, W.Va.Code, 25–4–1, *et seq.* We expressly rejected the argument that persons convicted of aggravated robbery were automatically rendered ineligible for such status because the offense is or may be punishable by life imprisonment.

"The State argues that a person convicted of aggravated robbery is punishable by life imprisonment by court decisions, as discussed earlier in this opinion. We conclude that this argument is without merit, for, as discussed earlier in this opinion, aggravated robbery is not expressly by statute punishable by life imprisonment, and penal statutes must be strictly construed. Furthermore, probation statutes are remedial in nature and are to be liberally construed in favor of the defendant.... This Court stated this proposition in the following manner in *State ex rel. Simpkins v. Harvey*, 172 W.Va. 312, 305 S.E.2d 268 (1983): '[T]he Legislature has granted trial courts discretion to consider probation in any case where [certain statutory language authorizes the same and] no specific statutory language forbids probation, ...' 172 W.Va. at 319, 305 S.E.2d at 276." 177 W.Va. at 73, 350 S.E.2d at 700.

We accordingly hold that a person convicted of aggravated robbery under W.Va. Code, 61–2–12, is eligible to be considered for probation under W.Va.Code, 62–12–2, unless there has been a specific finding of the use of a firearm under W.Va.Code, 62–12–2(c)(1) (1981), or the five-year felony bar under W.Va.Code, 62–12–2(a) (1981), applies. This result obtains because aggravated robbery is not expressly punishable by

**6.** Syllabus Point 13 of *Davis* states:

"Under West Virginia Code § 62–12–2(c)(1) (1984 Replacement Vol.), the commission or attempted commission of a felony with the use, presentment, or brandishment of a firearm must be clearly stated in the indictment or presentment by which a person is charged and must be found by the jury upon submission of a special interrogatory for such purpose in order to make any person ineligible for probation upon conviction in a jury trial of a felony prosecution."

**7.** W.Va.Code, 62–12–2(a) (1981), provided:

"All persons who have not been previously convicted of a felony within five years from the date of the felony for which they are charged, and who are found guilty of or plead guilty to any felony, the maximum penalty for which is less than life imprisonment, and all persons whether previously convicted or not, who are found guilty of or plead guilty to any misdemeanor, shall be eligible for probation, notwithstanding the provisions of sections eighteen and nineteen [§§ 61–11–18 and 61–11–19], article eleven, chapter sixty-one of this Code."

In 1986, this provision was amended to read as follows:

"All persons who are found guilty of or plead guilty to any felony, the maximum penalty for which is less than life imprisonment, and all persons who are found guilty of or plead guilty to any misdemeanor, shall be eligible for probation, notwithstanding the provisions of sections eighteen and nineteen [§§ 61–11–18 and 61–11–19], article eleven, chapter sixty-one of this code."

a life sentence. Thus, W.Va.Code, 62–12–2(a) (1981), forms no absolute bar against probation consideration where the sentence imposed is less than life imprisonment. Since the trial judge erroneously determined that the defendant was ineligible for probation, we remand for resentencing to permit the judge to consider her suitability for probation.

Remanded.