STATE OF WEST VIRGINIA

*v.*

WARREN GAYLE MYERS

(No. 13601)

Decided February 24, 1976.

*Jones, Williams, West & Jones, Jerald E. Jones* for plaintiff in error.

*Chauncey H. Browning,* Attorney General, *David P. Cleek,* Assistant Attorney General, for defendant in error.

WILSON, JUSTICE:

On June 19, 1973, a jury found the defendant below guilty of murder in the first degree and recommended mercy. On appeal, the defendant contends that he was prejudiced: (1) by the court's refusal to permit defendant's psychiatrists to make full and adequate disclosure of the history given to them by the defendant as well as the history contained in various medical and military records; (2) by the court's failure properly to instruct the jury on the issue of insanity; and (3) by the court's failure either to declare a mistrial or to caution the jury properly in connection with certain remarks regarding punishment which were made by the Prosecuting Attorney in his closing argument.

The defendant was indicted by a grand jury of the then Intermediate Court of Harrison County, West Virginia, at the March 1973 term thereof, charging him as follows:

"... that Warren Gayle Myers, on the day of January, 1973, in the said County of Harrison, feloniously, wilfully, maliciously, deliberately and unlawfully did slay, kill and murder one David Sam Haddix; ..."

The defendant entered pleas of not guilty and not guilty by reason of insanity.

At the trial below, the State introduced evidence disclosing that on January 20, 1973, following a fight between the defendant and the decedent at the Twin Pines Tavern in Harrison County, West Virginia, the defendant left the tavern and approximately thirty minutes later returned with a rifle and shot and killed David Sam Haddix.

The defendant offered no evidence to rebut the account of the State's witnesses as to what had occurred at the Twin Pines Tavern.

Instead, the defense confined itself to an effort to establish that the defendant was legally insane at the time of the commission of the alleged offense.

In this connection, the defense offered the testimony of Dr. Arthur Mardones and Dr. A. V. Vallarin, both of whom were licensed to practice medicine in the State of West Virginia and were accepted by the court as expert witnesses competent to testify in the field of psychiatry. Both doctors testified that, at the time of the commission of the alleged offense, the defendant was suffering from a mental disease or illness which they characterized as paranoid schizophrenia.

The State did not present any expert testimony in its behalf to rebut that offered by the defendant.

During the testimony of Dr. Mardones, it appeared that the defendant had been examined and treated by Dr. Mardones at a Veterans' Administration Hospital on several occasions both on an inpatient and outpatient basis prior to the alleged offense. The court refused to permit the doctor to testify as to information regarding the defendant which had come to him through various medical records regarding the defendant's military service and resulting psychiatric difficulties.

The court also refused to permit either Dr. Mardones or Dr. Vallarin to state in full detail the history which was given to them by the defendant as a part of their examination of the defendant subsequent to the commission of the alleged offense, including an account of the circumstances of the fight and the shooting.

The defendant by counsel contends that such restrictions placed upon the development of psychiatric testimony prevented him from making a full presentation of his psychiatric defense and further prejudiced that defense by making it impossible for him to establish fully and completely the basis of the diagnosis which the doctors made.

The defendant's contention in this respect is well taken, and this Court finds that the trial court unduly re-

stricted the presentation of psychiatric testimony on behalf of the defendant.

One of the diagnostic tools at the command of the psychiatrist is the information which he can obtain from the defendant in the form of an interview. The interview is as essential as a diagnostic tool for the psychiatrist as is the x-ray examination for the orthopedist or the laboratory work for the diagnostician. The information elicited during the interview should, if the defendant so elects, be fully disclosed to the jury. A limitation on such disclosure prevents the psychiatrist from stating to the jury one of the important and indeed indispensable elements of his diagnosis and to that extent prevents him from fully advising the jury as to the basis of his opinion. It has long been recognized in this State that statements made to a doctor by one whom he is examining are admissible as a ground and reason for an opinion to be given in evidence by such witness. *Curfman v. West Penn,* 113 W. Va. 85, 166 S.E. 848 (1932). To hold otherwise would seriously restrict the doctor in any legitimate explanation which he might offer as to his diagnosis.

Likewise, it is prejudicial to preclude a doctor from making reference to information which comes to him in the form of records or documents prepared in the normal course of either his examination or treatment of the patient. Of course, it should be established that such records have been kept in the regular course of professional care or treatment. If they come to the physician with their source and reliability so established and if they are documents and records on which he relies for the purpose of making his diagnosis, there is no sound reason why he should not be permitted to refer to them and to disclose to the jury that they were taken into consideration by him in arriving at his diagnosis.

The psychiatric testimony in this case suggests that the defendant had a long history of mental illness possibly originating out of some of his experiences in World War II. It appears that the witness Mardones as a Vet-

erans' Administration physician had acquired records relating to the defendant's background and showing diagnoses and treatment of defendant's mental disorders prior to the offense with which the defendant was charged. To prevent the doctor from utilizing such records and from disclosing to the jury his utilization of them in arriving at his diagnosis places an unreal stricture on him and compels him to be not only less than frank with the jury but also compels him to appear to base his diagnosis upon reasons which are flimsy and inconclusive when in fact they may not be.

In a murder case, the law recognizes that one of the defenses available to the defense is that of insanity. When insanity is sought to be proved by expert medical testimony, the trial court should not keep from the jury information which may have been essential to the diagnosis.

The defense of insanity is a serious and material defense and in most instances is established or is attempted to be established by reliance upon expert medical testimony. The field of psychiatry is well recognized in the medical profession and should be equally well recognized in the law. It can no longer be treated in a cavalier fashion as being less worthy of careful attention than testimony offered in other fields of medical specialization.

We hold, therefore, that the psychiatrists should have been permitted by the trial court to state fully all of the information regarding the defendant's background which they obtained either through their interviews with the defendant or through reasonably authenticated records kept in the normal course of the rendition of any medical care previously given to the defendant and relied upon by the testifying doctor in arriving at his opinion.[1]

---

[1]We are not dealing here with the admissibility of hospital records as such and in that respect this case is differentiated from

It is unrealistic for the law to close its eyes to the manner in which doctors practice their profession. In making diagnoses and in prescribing treatment doctors regularly make use of a host of records which are kept in the regular course of their profession. For the law to require that doctors ignore the manner in which they practice their profession or ignore information which comes to them in the regular course of their profession and upon which they rely for the purpose of making diagnoses or prescribing treatment is a wholly antiquated and unjustifiable restraint. An imposition of such restraints does a disservice to the integrity of medical testimony and in a case such as this, seriously interferes with the defendant's opportunity to present a defense which the law makes available to him.

The defendant claims further that he was prejudiced by State's Instruction No. 5, as follows:

> "The Court instructs the jury that although you may believe from the evidence that Warren Gayle Myers, was laboring under partial insanity at the time David Sam Haddix was killed, if he still understood the nature and character of his act and its consequences, and had knowledge that it was wrong and criminal to shoot him, if you believe beyond a reasonable doubt that he did shoot him, and that he died as a result thereof, and if he was capable of knowing at the time that if he did shoot him he would do wrong and receive punishment, then any such partial insanity that he may have been laboring under at the time is not sufficient to exempt him from responsibility to the law for his crime of killing him."

This Court, in *State v. Grimm,* W. Va., 195 S.E.2d 637, 647 (1973), recommended for the guidance of trial courts

---

*Keller v. Wonn,* 140 W. Va. 860, 87 S.E.2d 453 (1955); *Cline v. Evans,* 127 W. Va. 113, 31 S.E.2d 681 (1944). We also distinguish the situation presented here from Syllabus Point 4 in *Sisler v. Hawkins,* ＿＿ W. Va. ＿＿, 217 S.E.2d 60 (1975), dealing with an expert witness basing his opinion on the opinions of others.

regarding instructions on the issue of insanity that they adopt an approach based on the Model Penal Code and suggested that the trial courts dispense with the more limited and archaic test of right and wrong under the M'Naghten Rule.

State's Instruction No. 5 obviously does not conform to the approach recommended in *Grimm.*

State's Instruction No. 5 is not a correct statement of the law regarding the insanity defense in this State and is otherwise confusing and misleading in referring to some concept of "partial insanity" which this Court does not find reflected in the record in any of the testimony which was given.

This Court again announces its approval of "... an instruction to the effect that an accused is not responsible for his act if, at the time of the commission of the act, it was the result of a mental disease or defect causing the accused to lack the capacity either to appreciate the wrongfulness of his act, or to conform his act to the requirements of the law." *State v. Grimm, supra.*

An instruction regarding insanity which embodies some other test or which is not governed by the evidence in the case constitutes prejudicial error.

The trial court's treatment of the insanity defense was further rendered deficient by its giving of State's Instruction No. 6, as follows:

> "The Court instructs the jury that if the defendant, Warren Gayle Myers, relies upon insanity as a defense to the crime charged against him in the indictment in this case, he must prove such insanity to the satisfaction of the jury in order to entitle him to an acquittal on that ground, and that the prisoner cannot rely simply on having raised a reasonable doubt in the minds of the jury as to whether or not he was insane at the time he committed that act charged to him by the indictment in this case, if you believe beyond a reasonable doubt from all the evidence in

this case that the defendant, Warren Gayle Myers, is guilty as charged in the indictment in this case."

In this State, the burden of proving insanity is upon the one who asserts the defense. *State v. Cook*, 69 W. Va. 717, 72 S.E. 1025 (1911); *State v. McCauley*, 130 W. Va. 401, 43 S.E.2d 454 (1947). This burden need only be carried by a preponderance of the evidence. State's Instruction No. 6 fails to instruct properly as to the burden of proof which is carried by the defendant in this case—his burden being only to prove his defense of insanity by a preponderance of the evidence. Further, by endeavoring to define the burden of proof which the defendant carries regarding the proof of insanity in terms of "reasonable doubt," the instruction succeeds only in confusing the jury and diverts the jury's attention from the true measure of proof which the law requires.

The third assignment of error which this Court finds meritorious has to do with remarks which were made by the Prosecuting Attorney in his closing argument to the effect that if the jury found the defendant guilty of murder in the second degree he could be on parole after five years or that if the jury were to find the defendant not guilty by reason of insanity he would just be turned loose if he were sent to the Weston Hospital or the Veterans' Hospital.

This Court recognizes that wide latitude must be given to all counsel in connection with final argument.

However, in a criminal case in which the prosecution endeavors to describe to the jury how another arm of the government may treat the questions of probation or parole or confinement, the State goes beyond any legitimate scope of final argument, goes outside the evidence, and endeavors to give to the jury a point of view regarding the manner in which punishment will be handled which improperly intrudes and reflects upon an aspect of administration of criminal justice which is not the function of the courts and is not a proper consideration for the jury.

In this case the trial court ruled that it was proper argument for the Prosecuting Attorney to say that the defendant, on conviction for second degree murder, could be on parole after five years. In view of the fact that this Court finds no error in an instruction which embodies in statutory language the penalties which will be imposed by law for the various offenses of which a defendant may be found guilty, such ruling by the trial court was probably technically correct. The same cannot be said with reference to the court's treatment of the Prosecutor's remark:

> "When they talk about keeping somebody in Weston Hospital or even at the V.A., we know they get out right and left."

Such a remark was prejudicial, and although the court said that it did not believe that it was proper argument, it failed to grant a mistrial or otherwise to treat the remark with the seriousness which it deserved.

We do not say that every improper remark is a proper basis for a mistrial. However, we do not think that an improper remark should be lightly treated by a trial court. If the remark has the potential of prejudicing the defendant, a mistrial should be seriously considered by the court, and at the very least, the court, in the exercise of its discretion, should do everything reasonably possible to obliterate any such prejudicial influence.

We are not unaware of the difficulties faced by a trial court, particularly in a criminal proceeding. The careful balance which must be maintained by the trial court in protecting the right of the accused to a fair trial, while at the same time recognizing that the State has an equal right to a fair trial, poses substantial problems which a trial court must be prepared to resolve almost instantly. Nonetheless, we take this opportunity to point out that the proceedings at trial must be so conducted as to reflect that the trial court has given careful attention to the balancing of these interests.

In this case, we have found various errors which are, in our judgment, individually sufficient to constitute prejudicial error. Thus, this is not a proper case for the application of the doctrine of cumulative error. Nonetheless, we do not hesitate to say that the doctrine of cumulative error as defined in Syllabus Point 5 of *State v. Smith*, W. Va., 193 S.E.2d 550 (1972), is a continuing viable principle of law in this jurisdiction and is one which trial courts, in the balancing of interests in a criminal case, must keep constantly in mind.

For the reasons stated in this opinion, the judgment of the then Intermediate Court of Harrison County is reversed; the verdict of the jury is set aside; and a new trial is awarded to the defendant Warren Gayle Myers.

*Reversed, remanded, new trial awarded.*