IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2013 Term

**FILED**

**November 6, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 12-0197

STATE of WEST VIRGINIA,
Plaintiff Below, Respondent

v.

LEVON FLOURNOY,
Defendant Below, Petitioner

_____

Appeal from the Circuit Court of Cabell County
The Honorable Alfred E. Ferguson, Judge
Criminal Action No. 06-F-88

AFFIRMED
_____

Submitted: September 10, 2013
Filed: November 6, 2013

Duane C. Rosenlieb, Jr., Esq.                     Patrick Morrisey
Public Defender Services                          Attorney General
Charleston, West Virginia                         Elbert Lin
Counsel for the Petitioner                        Solicitor General
                                                  Charleston, West Virginia
                                                  Counsel for the Respondent

The Opinion of the Court was delivered PER CURIAM.

## SYLLABUS BY THE COURT

1. "When reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error." Syllabus Point 1, *State v. Lacy*, 196 W.Va. 104, 468 S.E.2d 719 (1996).

2. "As a general rule, the refusal to give a requested jury instruction is reviewed for an abuse of discretion. By contrast, the question of whether a jury was properly instructed is a question of law, and the review is *de novo*." Syllabus Point 1, *State v. Hinkle*, 200 W.Va. 280, 489 S.E.2d 257 (1996).

3. "An instruction outlining factors which a jury should consider in determining whether to grant mercy in a first degree murder case should not be given." Syllabus Point 1, *State v. Miller*, 178 W.Va. 618, 363 S.E.2d 504 (1987).

4.	"It is a permissible practice to allow jurors to take notes on the evidence during trial as long as proper voir dire is permitted concerning the jurors' capacity to take notes, and a cautionary instruction is given concerning the proper and improper uses of note-taking.  The ultimate decision on whether to allow note-taking by the jury lies within the sound discretion of the trial court."  Syllabus Point 5, *State v. Triplett*, 187 W.Va. 760, 421 S.E.2d 511 (1992).

Per curiam:

The defendant, Levon Flournoy, appeals his conviction for murder of the first degree. Having fully considered the record, the briefs and arguments of counsel, the defendant's conviction and sentence are affirmed.

## I. *Factual Background*

On August 20, 2005, the defendant shot his girlfriend, Victoria West, in the face, killing her. In a recorded statement given to police less than three hours after the murder, the defendant admitted he shot Ms. West. After shooting Ms. West, the defendant claimed that he fired the gun twice at his own head in a failed attempt at suicide.

The defendant was subsequently indicted by a Cabell County Grand Jury for murder of the first degree. In a pretrial motion, defense counsel requested that the defendant undergo psychiatric and psychological examinations to determine his competency and criminal responsibility. The motion was granted by the trial court. The State then requested, pursuant to Rule 12.2 of the *West Virginia Rules of Criminal Procedure* [1995], "[w]ritten notice of the defendant's intention to offer a defense of insanity, mental disease or defect or any other mental condition of the defendant bearing upon the issue of guilt."

1

In a report filed with the trial court, an examining psychiatrist concluded that the defendant had

> the capacity to stand trial and participate with counsel in the preparation of his [defense] in the instant matter. Further, on or about the date in question, he was not suffering from any mental disease or defect, which would have precluded his ability to conform his behavior to the requirements of the law, should he have chosen to.

Similarly, a report filed by an examining psychologist concluded that there

> is nothing to suggest that [the defendant] was suffering from a mental disease or defect at the time of the alleged crime to the extent that [the defendant] lacked substantial capacity to either appreciate the wrongfulness of his actions or to conform his conduct to the requirements of the law.

The defendant's case proceeded to trial. During the trial, the jurors were permitted to take notes that they could later use during their deliberations.

Near the end of the trial, the parties met in conference to discuss jury instructions. Defense counsel requested that the jury be instructed on the defense of insanity. The State objected, noting that the defense had not provided the notice required by Rule 12.2 to indicate that the defendant intended to raise a defense based on a mental disease or defect. The trial court denied the request, finding that the evidence did not support giving the requested instruction.

2

The jury found the defendant guilty and did not recommend mercy in its verdict. Thereafter, the trial court sentenced the defendant to life imprisonment without the possibility of parole.

## II. *Discussion*

The defendant asserts four assignments of error in his appeal: 1) that his recorded confession was obtained in violation of his right to be promptly presented before a magistrate or judge following arrest and, therefore, the confession should have been suppressed; 2) that the trial court erred by refusing to give an insanity instruction, thereby negating the defendant's "theory of defense"; 3) that *W.Va. Code* § 62-3-15 [1994], is unconstitutional because it provides no guidance as to the factors that may be considered by a jury when deciding whether to recommend mercy at sentencing; and 4) that the trial court committed reversible error because it failed to give the jury any guidance about how the members could use their notes during deliberations.

## A. Prompt Presentment

The defendant contends that his recorded confession was obtained in violation of his right to be promptly presented to a magistrate following his arrest, and that the trial court committed error by not suppressing it. In Syllabus Point 1 of *State v. Lacy*, 196 W.Va. 104, 468 S.E.2d 719 (1996), this Court held that

3

> [w]hen reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error.

Applying this standard, we find no merit in the defendant's arguments.

The record shows that the defendant was taken into custody within minutes after he shot Ms. West. Detective Chris Sperry of the Huntington Police Department testified that he was one of the first emergency responders and arrived at the scene at approximately 10:27 p.m. Upon arrival the defendant was standing beside another officer saying, to no one person in particular, that "I meant to shoot myself . . . I couldn't. I shot twice. I meant to shoot myself." Detective Sperry, observing that Ms. West had been shot right below the eye and that she "was obviously a deceased female," began interviewing witnesses. Learning that there had been two or three shots, Detective Sperry concluded that the defendant's story—that he was only trying to shoot himself—was not adding up, and he ordered a patrol officer to take the defendant to the police station for processing and gunshot residue testing. Being the only detective on the scene, Detective Sperry testified that he had a number of things he needed to do before he could return to the police station and speak with the defendant, but that the delay was only about one hour.

4

Time stamps on the defendant's mugshots and other photographs taken of the defendant indicate that the first photo was taken at 11:18 p.m. and that the last photo was taken at 11:33 p.m. Detective Sperry testified that mugshots are normally the first thing done following an arrest[1] and that fingerprinting is one of the last things done. Detective Sperry arrived back at police headquarters at approximately 11:50 p.m., and—after conferring with other investigators—sat down with the defendant and advised him of his Miranda Rights. Detective Sperry noted that the Miranda Rights sheet indicates the defendant was read his rights at 12:56 a.m., that the defendant waived those rights at 1:01 a.m. and that he then began to give a recorded statement. However, the tape player malfunctioned, necessitating that another player be obtained. After getting the player, the defendant was again advised of his rights, which he again waived. In his recorded statement, the defendant confessed to murdering Ms. West, stating that it was his intent to kill her, and that he actually tried to shoot her in the mouth. The defendant's confession concluded at 1:22 a.m.

The right to be promptly presented to a magistrate is set forth in *W.Va. Code* § 62-1-5(a)(1) [1997], which states, in pertinent part, that

> any person making an arrest without a warrant for an offense committed in his presence or as otherwise authorized by law, shall take the arrested person without unnecessary delay before a magistrate of the county where the arrest is made.

---

[1]Detective Sperry explained that this procedure is followed in the effort to help prevent false claims of abuse by prisoners.

Similarly, Rule 5 of the *West Virginia Rules of Criminal Procedure* requires that

> any person making an arrest without a warrant shall take the arrested person without unnecessary delay before a magistrate within the county where the arrest is made. If a person arrested without a warrant is brought before a magistrate, a complaint shall be filed forthwith which shall comply with the requirements of Rule 4(a) with respect to the showing of probable cause. When a person, arrested with or without a warrant or given a summons, appears initially before the magistrate, the magistrate shall proceed in accordance with the applicable subdivision of this rule.

> In *State v. Sugg*, 193 W.Va. 388, 395-96,  456 S.E.2d 469, 476-77 (1995)

(citations and footnote omitted), we observed that

> [c]ertain delays such as delays in the transportation of a defendant to the police station, completion of booking and administrative procedures, recordation and transcription of a statement, and the transportation of a defendant to the magistrate do not offend the prompt presentment requirement.

Similarly, in *State v. Whitt*, 184 W. Va. 340, 345, 400 S.E.2d 584, 589 (1990) (citations

omitted), we noted that

> [u]nder our prompt presentment rules . . . delay in transporting a defendant to police headquarters and the time consumed in routine processing is not critical for prompt presentment purposes . . . [and] delay in presenting the defendant to a magistrate after he has confessed does not violate our prompt presentment statute either, because the purpose of the statute is to avoid prolonged interrogation in order to coerce a confession[.]

More recently, in *State v. Rogers*, 231 W.Va. 205, 744 S.E.2d 315 (2013) citing Syllabus

Point 8 of *State v. Humphrey*, 177 W.Va. 264, 351 S.E.2d 613 (1986), we explained that

6

"[o]rdinarily the delay in taking an accused who is under arrest to a magistrate after a confession has been obtained . . . does not vitiate the confession under our prompt presentment rule."

Applying our standard of review as set forth in Syllabus Point 1 of *State v. Lacy*, *supra*, which requires that we construe the facts in the light most favorable to the State and that we give deference to the findings of the circuit court, we find no clear error in the circuit court's ruling on the defendant's motion to suppress his confession. The defendant was made aware shortly after his arrest that he had rights, he agreed to waive those rights, and he then agreed to give a statement. There is no evidence that the short period of time between his detention at the crime scene and his statement had a coercive influence on his decision to waive his rights and give a statement. Instead, the evidence supports the circuit court's finding that any delay which did occur was minimal, and that the defendant "could have stopped the interview at any time."

**B. Insanity Instruction**

The defendant argues that the trial court denied him a theory of defense by refusing to give his proffered instruction on insanity as a defense to the murder charge. The State argues that the trial court properly refused to give an insanity instruction because the defendant failed to comply with the pretrial notice requirements contained in Rule 12.2 of

the *West Virginia Rules of Criminal Procedure*, and also because the evidence did not support giving an insanity instruction.

Initially, we observe that "[a]s a general rule, the refusal to give a requested jury instruction is reviewed for an abuse of discretion. By contrast, the question of whether a jury was properly instructed is a question of law, and the review is *de novo*." Syllabus Point 1, *State v. Hinkle*, 200 W.Va. 280, 489 S.E.2d 257 (1996). The defendant tendered several proposed jury instructions relating to insanity. The trial court refused the proffered instructions, finding there was no evidence that the defendant was criminally insane at the time he shot and killed Ms. West. We agree.

No witness, including the defendant's own expert witnesses, testified that the defendant met the parameters of our test for raising insanity as a defense to a criminal charge. In Syllabus Point 2 of *State v. Myers*, 159 W.Va. 353, 222 S.E.2d 300 (1976), *overruled on other grounds by State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995),[2] we held that

> [w]hen a defendant in a criminal case raises the issue of insanity, the test of his responsibility for his act is whether, at the time of the commission of the act, it was the result of a mental disease or defect causing the accused to lack the capacity either to appreciate the wrongfulness of his act or to conform his

---

[2]*Guthrie* did not overrule the points of law set forth in *Myers* that pertain to a defendant raising insanity as a defense in a criminal cases. Those points of law remain controlling in criminal cases in West Virginia.

8

act to the requirements of the law, and it is error for the trial court to give an instruction on the issue of insanity which imposes a different test or which is not governed by the evidence presented in the case.

We further held in Syllabus Point 3 of *Myers* that

[t]he defendant who raises the issue of his insanity at the time of the commission of the act carries the burden of proving that defense by a preponderance of the evidence, and it is error for the court to give an instruction which suggests or imposes some different burden of proof.

The record contains no evidence that the defendant was criminally insane at the instant he murdered Ms. West. In West Virginia, a defendant seeking an "insanity instruction must present some competent evidence on the subject," and "cannot ask the jury simply to consider, as an alternative to guilt or innocence, that the defendant could have been insane at the time of the alleged offense." 2 *Franklin D. Cleckley, Handbook on West Virginia Criminal Procedure* 108 (2d ed. 1993). Dr. Bobby Miller, a defense expert certified in general and forensic psychiatry, testified that the defendant's shooting of Ms. West "was a reaction to the events" and that it was his expert opinion that the defendant did not premeditate killing Ms. West. However, Dr. Miller acknowledged during cross-examination that the defendant's particular psychiatric issues did not preclude him from having the capacity to formulate premeditation or malice. Notwithstanding this acknowledgment, Dr. Miller testified that it remained his opinion that the defendant had reacted and that his actions were "provoked and spontaneous" and lasted only milliseconds. This testimony prompted

9

the State to play a portion of the defendant's taped confession, an excerpt of which is as

follows:

> **THE DEFENDANT**: . . . I just didn't know what to do. And I could have called you all [the police] before. So I went into the house and I - - I loaded my gun. I don't normally keep a loaded gun. I loaded my gun, and I was just going to shoot myself. I - - what [Ms. West] did to me, she was just going to do to somebody else. So I had made it up in my mind I was going to take her out and take me out too. That was going to solve all of this [B.S.], but I missed. I don't know why.
>
> **DETECTIVE SPERRY**: How many shots do you remember firing?
>
> **THE DEFENDANT**: Three shots. I fired one point blank in her face. I was trying to shoot her in the mouth.

Asked about this testimony in relation to his conclusion that the defendant's actions were

"provoked and spontaneous" and lasted "only milliseconds," Dr. Miller noted the defendant's

statement "I don't know why" as being supportive of his opinion.

We find no merit in the defendant's argument that the trial court erred in

refusing his proposed instructions on insanity as a defense to criminal offenses. There is no

evidence in the record to support his entitlement to any instruction on insanity.[3]

---

[3]Because we find that the evidence did not warrant giving an insanity instruction, we need not address the issue of whether the defendant could be barred from raising insanity as a defense for failing to comply with the notice requirements of Rule 12.2 of the *West Virginia Rules of Criminal Procedure*.

## C. Mercy in Murder Cases

The defendant next argues that *W.Va. Code* § 62-3-15 [1994] is unconstitutional because it provides no guidance as to the factors that may be considered by a jury when deciding whether to recommend mercy at sentencing. The defendant's arguments appear to hinge on his belief that the Legislature's decision to not delineate specific standards–factors–that a jury should consider in murder cases *might* lead to arbitrary results (*i.e.*, that two juries presented with the same evidence and facts might reach a different sentencing recommendation). The defendant's arguments are unpersuasive, and are ones that this Court has previously addressed.

In *State v. Miller*, 178 W.Va. 618, 621, 363 S.E.2d 504, 507 (1987) (citations omitted), we noted that in first degree murder cases, a "finding of guilt automatically results in a life sentence" and that the only issue on sentencing before a jury is whether the defendant should ever be eligible for parole. We then discussed at length the issue of whether a jury should be instructed on what it should–and should not–consider in reaching a decision on mercy. Our review in *Miller* included how courts in other jurisdictions have addressed similar issues. Based on that review, we held in *Miller* that "[a]n instruction outlining factors which a jury should consider in determining whether to grant mercy in a first degree murder case should not be given." *Id*., at Syllabus Point 1. *See also* Syllabus Point 7, *State v. Triplett*, 187 W.Va. 760, 421 S.E.2d 511 (1992) ("The recommendation of

11

mercy in a first degree murder case lies solely in the discretion of the jury. Therefore, it would be improper for the trial court to set aside a jury verdict of first degree murder without a recommendation of mercy in order to give a recommendation of mercy.").

The defendant has given us no reason to revisit our findings and holding in *Miller.* Accordingly, we find this assignment of error to be without merit.

**D. Juror Notes**

The defendant's final assignment of error is that the trial court committed reversible error because it failed to give the jurors any guidance about how they could use their notes during deliberations. A review of the record shows that the trial court instructed the jurors at the beginning of the trial on the use of notes and note taking. The defendant did not object to that instruction or request that any other instruction be given to the jury following presentation of the evidence. On appeal, the defendant did not request that we consider the issue as plain error.

In Syllabus Point 5 of *State v. Triplett*, *supra*, we approved the taking of notes by jurors in criminal trials:

> It is a permissible practice to allow jurors to take notes on the evidence during trial as long as proper voir dire is permitted concerning the jurors' capacity to take notes, and a cautionary instruction is given concerning the proper and improper uses of

12

note-taking. The ultimate decision on whether to allow note-taking by the jury lies within the sound discretion of the trial court.

While the trial court's preliminary instruction to the jury on note-taking in the defendant's case is not as complete or thorough as the instruction we approved in *Triplett*, we see no issue that would prompt this Court to *sua sponte* consider the issue under a plain error analysis, or that would require a reversal of the defendant's conviction for a new trial. Accordingly, we find no merit in this assignment of error.

III. *Conclusion*

For the reasons set forth in this Opinion, we find no reversible error and the defendant's conviction is affirmed.

Affirmed.